# Sylvester Kemp, Defendant in Error, v. Southern Coal & Mining Company, Plaintiff in Error.

1. MINES AND MINERALS, § 141*—*when declaration sufficiently alleges violation of duty to inspect roof of mine.* In an action by a miner to recover for injuries sustained by reason of being struck by a clod which fell from the roof of a mine, a declaration alleging that at the time when plaintiff was injured a dangerous condition existed in the roof above the place where plaintiff was required "to work and to be," *held* sufficiently to allege a violation of section 24 of the Miners' Act (J. & A. ¶ 7495), requiring the mine examiner to inspect places in the mine where men "are required in the performance of their duties to pass and to work," and to mark all dangerous roofs in such places.

2. MINES AND MINERALS, § 179*—*when evidence sufficient to sustain finding that miner was in working place at time of injury.* In an action by a miner to recover for injuries sustained by being struck by a large clod which fell from the roof of the room where plaintiff was when injured, where the declaration alleged a violation of section 24 of the Miners' Act (J. & A. ¶ 7495), requiring the mine examiner to inspect all places where men were required in the performance of their duty "to pass and to work," and to

mark all dangerous places, evidence *held* to show that plaintiff was in his working place at the time of the accident within the meaning of the act.

3. MINES AND MINERALS, § 173*—*when evidence sufficient to comply with statute.* In an action by a miner to recover for injuries sustained by being struck by a large clod which fell from the roof of the room where plaintiff was when injured, where the declaration alleged a violation of section 24 of the ·Miners' Act (J. & A. ¶ 7495), requiring the mine examiner to inspect all places where men were required in the performance of their duties "to pass and to work," and to mark all dangerous places, evidence *held* sufficient to comply with the statute.

4. MINES AND MINERALS, § 41*—*what is object of Miners' Act.* The object of the Miners' Act (J. & A. ¶ 7475 *et seq.*) and of other similar acts is to provide for the safety of those engaged in mining, and the requirement of too literal a compliance therewith will deprive such acts of the power to accomplish their object.

5. MINES AND MINERALS, § 132*—*when miner failing to sound roof of mine guilty of contributory negligence.* In an action by a miner to recover for injuries sustained as a result of being struck by a large clod which fell from the roof of the room where plaintiff was when injured, where there is a violation of section 24 of the Miners' Act (J. & A. ¶ 7495) by defendant, a violation by plaintiff of paragraph C of section 23 of the same Act (J. & A. ¶ 7497), requiring miners to sound and examine the roof of their working places before commencing work, amounts merely to contributory negligence.

6. MINES AND MINERALS, § 125*—*when contributory negligence no defense.* Contributory negligence is no defense to an action brought under the Mining Act (J. & A. ¶ 7475 *et seq.*).

7. MINES AND MINERALS, § 176*—*when evidence sufficient to show dangerous condition of roof of mine.* In an action by a miner to recover for injuries sustained by being struck by a large clod which fell from the roof of the room where plaintiff was when injured, evidence *held* to show that at the time of such injury such roof was in a dangerous condition.

8. MINES AND MINERALS, § 84*—*when owner or operator liable for wilful violation of statutory duty to inspect mine.* Under the Miners' Act (J. & A. ¶ 7475 *et seq.*), the owner or operator of a mine cannot excuse himself from liability growing out of a wilful violation of such statute in failing to examine the mine properly and to mark dangerous places therein, which are known to him by showing that his examiner or manager thought the place was not dangerous.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

9. MINES AND MINERALS, § 84*—*what constitutes wilful violation of Mining Act.* The phrase "wilful violation" used in section 29 of the Miners' Act (J. & A. ¶ 7503) means a conscious violation.

Error to the Circuit Court of St. Clair county; the Hon. GEORGE A. CROW, Judge, presiding. Heard in this court at the March term, 1915. Affirmed. Opinion filed December 1, 1915.

KRAMER, KRAMER & CAMPBELL, for plaintiff in error.

F. J. TECKLENBERG and D. J. SULLIVAN, for defendant in error.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Sylvester Kemp, defendant in error, was severely injured while working in a coal mine of plaintiff in error, on September 20, 1911, and brought suit against the company to recover damages for the injury sustained. Two trials were had by a jury resulting in favor of Kemp, and a third trial was then had before the court without a jury on a transcript of the evidence heard on the former trial. Upon this trial the court found the issues for Kemp and entered judgment against the company for $7,000, and the latter has brought the case here by writ of error seeking to reverse the judgment on the ground that the evidence is not sufficient to support the finding and judgment in favor of Kemp, that he was not entitled to recover even if the injury to him happened in his working place in the mine, because he did not perform the duties enjoined upon him by the statute in making an examination of the roof of the working place and because, as alleged, the court erred in its holdings on propositions of law and fact submitted by plaintiff in error.

There was little controversy on the facts in the case, as shown by the proofs. The company owned and operated a coal mine in St. Clair county, Illinois. One of the rooms in this mine was known as room No. 20,

off the northwest entry, and it was in this room that Kemp and his buddy began working. At the time of the injury this room was seventy feet long, thirty feet wide and some six feet high, and had in it a main track for cars running to within about ten feet of the face with points or spurs therefrom close up to the face. In mining the coal it was undercut with a machine and then shot down, loaded into cars and taken out. No shot firers were employed, the miners themselves both drilling the holes and firing the shots. Kemp and his buddy went to work there September 14th and worked together until the 17th, which was Sunday. On Monday and Tuesday Kemp worked alone, and on the morning of Wednesday the 20th he again went to the room alone to continue his work. He entered the mine about 8 o'clock, taking with him his dinner bucket and an oil bucket which he placed some eighteen feet from the face, three or four feet from the left side of the room and eight or ten feet from the track. He went to work shoveling up the coal which he had shot down the day before. He cleaned up next to the track and after he had loaded two cars and had shoveled the remaining coal on the left side back towards the face he was compelled to stop until he could get an empty car to load the coal into. While waiting for a car he went back to his bucket and filled his lamp. He then took a drink from his dinner bucket and was in the act of getting something to eat when a large clod, three feet long, two and a half feet wide, some three and a half inches thick and weighing about one hundred pounds fell from the roof upon him inflicting severe and permanent injuries.

No complaint is made that the amount of the judgment in this case is excessive, so it is unnecessary to refer to the nature and extent of the injuries received by Kemp. The company's mine examiner, who examined the room on the morning the accident occurred and made a record thereof, stated there were no unsafe

roofs or unsafe conditions, and it was shown by the proofs that the place in the roof where the clod was located was not marked as dangerous. At the time of the injury, the Miners' Act of 1911 was in force, and the provisions of that act in regard to inspecting and marking dangerous places were set out in paragraphs 4 and 6 of section 21 (J. & A. ¶ 7495) as follows:

"It shall be the duty of the mine examiner   *   *   * to inspect all places where men are required in the performance of their duties, to pass or to work, and to observe whether there are any recent falls or dangerous roof or accumulations of gas or dangerous obstructions in rooms or roadways.   *   *   *   When working places are discovered in which there are recent falls or dangerous roof or dangerous obstruction, to place a conspicuous mark or sign thereat, as notice to all men to keep out; and in case of accumulation of gas, to place at least two conspicuous obstructions across the roadway, not less than twenty feet apart, one of which shall be outside the last open cross-cut." Counsel for appellant insist that the declaration was insufficient to support a finding and judgment in favor of Kemp and that proof of its allegations does not entitle him to a recovery. Each count of the declaration alleged that there was a dangerous condition in the roof above the place where plaintiff was required to work and to be and that this condition would have been discovered by the mine examiner had he made a reasonable examination of the room, but that he failed to make such an examination of the room and while plaintiff was at his working place waiting for the box which he had loaded to be removed, he was injured by the clod falling upon him. While the charge in the declaration was that there was "dangerous condition in the roof above the place where plaintiff was required to work and to be" and that the same would have been discovered, had the mine examiner "made a reasonable examination of the room," the Act of

1911 relied on only makes it the duty of the examiner "to inspect all places where men are required in the performance of their duties, to pass or to work, and to observe whether there are any recent falls or dangerous roof or accumulations of gas or dangerous obstructions in rooms or roadways."

The criticism of counsel for plaintiff in error is that there was no duty under the statute which required the company to mark the place where plaintiff was required "to work and to be," but that its duty was only to inspect and mark places where men were required in the performance of their duty "to pass and to work," and further that it must be such place as one is required to pass and work in the performance of his duty. This distinction does not appear to us to be sound, and while the declaration does not use the exact words of the statute, yet we think the words used were sufficient to warrant a recovery in a proper case, under the statute. Counsel also criticises several counts of the declaration as being insufficient to support a finding and judgment in favor of defendant in error for the reason that they allege that had the mine examiner made a reasonable examination of the room he would have discovered the dangerous condition, it being claimed that under the Act of 1911 it was not the duty of the examiner to make an examination of the whole of the room but only of the place where the men "are required in the performance of their duties to pass or to work." This criticism of counsel also appears to us to be without sound foundation, especially in view of the fact that the statute directly requires that when working places are discovered in which there are dangerous roofs, the same shall be marked by the examiner. That Kemp was in his working place at the time he was injured, seems to us to be borne out by the proof. It is true he was not engaged in the work of drilling, firing or loading coal at the exact time when he was injured, but at that time he was engaged in

filling his lamp and in taking water and food, all of which were necessary in the prosecution of his work at a place in the room as close to his work as the buckets containing the oil, water and food could be placed without actually interfering with his work. In fact it appears from the proof that some of the coal which had been blown down the day before was scattered around the place where the buckets sat and that part of his work was to clear this up. It appears to us that upon these questions, both the declaration and the proof were within the Statute of 1911, and to require a more literal compliance with the statute would be to deprive it of its power of providing for the safety of those engaged in mining, which must be the object of all mining acts. *Henrietta Coal Co. v. Martin*, 221 Ill. 460.

It is also claimed by counsel for the company that Kemp ought not be entitled to recover because he did not perform certain duties required of him by the Act of 1911. Paragraph C, section 23 of that Act (J. & A. ¶ 7497) provides: "Every miner shall sound and thoroughly examine the roof of his working place before commencing work, and if he finds loose rock or other dangerous conditions, he shall not work in such dangerous place except to make such dangerous conditions safe. It shall be the duty of the miner to properly prop and secure his place for his own safety with materials provided therefor." Counsel insist that it was Kemp's duty under the statute to have sounded and examined the roof before he commenced work and that if he did not do so, and there is no evidence that he did, he should not be permitted to recover. Paragraph A, section 29 of the Act of 1911 (J. & A. ¶ 7503) provides a penalty for any wilful neglect, refusal or failure to do the things required to be done by the several sections thereof, and the question might arise in a proper case as to whether Kemp had made himself subject to pay that penalty, but his omission to per-

form his statutory duty to examine the roof, if he did omit it, could in a case of this kind amount at most only to contributory negligence on his part which is no defense to a suit brought under the mining law. *Illinois Collieries Co. v. Davis,* 137 Ill. App. 15, aff'd 232 Ill. 284; *Riverton Coal Co. v. Shepherd,* 111 Ill. App. 294, aff'd 207 Ill. 395.

It is again insisted that there was no wilful failure on the part of the mine examiner to inspect the places where plaintiff was required in the performance of his duties to pass or to work, and no wilful failure on the part of the examiner to make a proper record of examination. This is based on the fact that the proof showed the examiner did, in fact, make an examination of the mine and made a record of its condition as he claimed to have found it. That record showed that a number of rooms examined by him, including No. 20, were in good condition and that in the same there were no unsafe roofs or other unsafe conditions. The fact is, however, that the proofs show the roof in this room to have been in an unsafe condition. In *Actitus v. Spring Valley Coal Co.,* 246 Ill. 32, it is said: ''We do not think the owner or operator of a mine can excuse himself from liability growing out of a wilful violation of the Mines and Mining Act,—that is, from a conscious violation of the act,—in failing to properly examine the mine and mark dangerous places therein which are known to him, on the ground that his examiner or manager in good faith thought the place was not dangerous.''

The objections made by plaintiff in error to the rulings of the court upon the propositions of fact and law submitted by it do not appear to us to be well founded and relate, so far as they seem to be important, to questions which have been heretofore considered in this opinion and need not be again referred to. The finding and judgment in this case appears to us to be warranted by the evidence and the law. There have

been three trials, twice before a jury and once before a court without a jury, all resulting in a finding in favor of defendant in error, and no substantial reason appearing to us why the judgment should be reversed, the same is affirmed.

*Judgment affirmed.*