# Leo Cyrulik, by Zack Cyrulik, Appellee, v. Ritchey Coal Company, Appellant.

1. WORKMEN'S COMPENSATION ACT, § 2*—*what evidence sufficient to show notice of mine owner's election not to be bound by act.* In an action against a mine owner for injuries sustained by an employee, where it was claimed that proof had not been made that defendant had elected not to be bound by the Workmen's Compensation Act of 1913, proof that notice of such election specifically referring to the act of 1913 was properly filed with the Industrial Board and testimony by some witnesses that prior to the date of the injury they saw notices that defendant would not be bound by the Compensation Act, and by others that they saw such a notice after the injury, warranted the jury in concluding that the notice seen by the witnesses had reference to this act.

2. MASTER AND SERVANT, § 565*—*when variance does not exist as to election of employer not to be bound by Workmen's Compensation Act.* Variance between the allegations of a declaration with reference to defendant's election not to be bound by the Workmen's Compensation Act and the proof in regard thereto, because the title to the act referred to in the declaration was the act of 1911, while the notice testified to related to the act of 1913, was not established, where the allegation was that defendant had elected not to be bound by and pay compensation according to the Workmen's Compensation Act passed in 1913 and in force July 1, 1913, as the remainder of the title could be rejected as surplusage.

3. PLEADING, § 395*—*extent to which plaintiff must prove allegation.* A plaintiff is required to prove only enough of an allegation to make out his cause of action.

4. APPEAL AND ERROR, § 1474*—*when statement of conclusion by witness is harmless.* In an action by a miner for injuries sustained by the falling of a piece of white top from the roof of the mine in question, the action of the court in allowing a witness to state as a conclusion that the working place of plaintiff would be dangerous on account of the white top in the roof was not serious error, where such witness thereafter stated specifically why he would consider such roof dangerous.

5. INSTRUCTIONS, § 159*—*when construed as series.* It is not necessary that each instruction shall contain the statement that the jury must find from the preponderance of the evidence, but it is sufficient if that is clearly set forth in the series, so that the jury could not be misled in reference thereto.

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

6. MINES AND MINERALS, § 191*—*when instruction on wilful violation of act not erroneous.* An instruction relating to a wilful violation of the Mine and Miners' Act or wilful failure to comply with its provisions, stating that "the clause 'wilful violation of this act or wilful failure to comply with any of its provisions'°means, in the law, a knowing or conscious violation of the act or failure to comply with any of its provisions. The word 'wilful,' as used in the mining laws, means a knowing or conscious violation or omission to do the things required by the mining law," was not erroneous, although it would have been better had the cautionary words "knowing or conscious" been again inserted immediately prior to the words "failure to comply with any of its provisions."

7. MINES AND MINERALS, § 191*—*when instruction denying defense of contributory negligence not improper.* As the omission of a miner to perform his statutory duty to examine the roof of his working place could amount at most, only to contributory negligence on his part, which is no defense to a suit brought under the mining law, an instruction stating in effect that contributory negligence was no defense was not improper.

8. INSTRUCTIONS, § 81*—*when instruction singling out portion of evidence not erroneous.* The singling out of a portion of the evidence in a personal injury case by a miner against his employer, by referring to "white top" in the roof of the working room, would have been error were it not for the fact that all the witnesses who testified with reference to such room said specifically, or conceded, that there was white top in the roof.

9. MINES AND MINERALS, § 179*—*when evidence that injured miner was in proper working place sufficient.* In an action by a miner under legal age, the claim that plaintiff was not in his proper working place at the time of the injury was fully met by evidence that he had been allowed to work with his father with the express knowledge of the defendant's managing officers, and that this custom of permitting sons to work with their fathers prevailed in the mine in question with the knowledge and consent of the company.

10. MINES AND MINERALS, § 176*—*sufficiency of evidence relative to examination by mine owner.* The duty of mine owners to make an examination is enjoined by law, which contemplates a proper and sufficient examination to discover whether dangerous conditions existed, and if such an examination would have disclosed a dangerous condition, a jury is justified in concluding either that the examination was not made or that it disclosed the actual condition, notwithstanding the testimony of a mine examiner to the contrary.

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

11. MINES AND MINERALS, § 176*—*sufficiency of evidence relating to mine examiner's failure to perform legal duty.* If when a mine examiner examined the room in question he discovered a dangerous condition, it was his duty to have marked it dangerous, or if by a careful examination he could have discovered such dangerous condition and did not make the examination, in either event the jury would have been warranted in finding a wilful failure to perform the duty imposed by law.

Appeal from the Circuit Court of Perry county; the Hon. J. F. GILLHAM, Judge, presiding. Heard in this court at the March term, 1919. Affirmed. Opinion filed November 7, 1919.

NELSON B. LAYMAN, for appellant.

T. M. WEBB, for appellee.

MR. JUSTICE BOGGS delivered the opinion of the court.

An action on the case was instituted in the Circuit Court of Perry county by appellee, a minor, suing by his father as next friend, against appellant, Coal Company, to recover damages under the Mine and Miners' Act for alleged injuries received on December 2, 1916, while working in appellant's mine.

The declaration consists of two counts: The first count alleges among other things that the mine examiner wilfully failed and omitted to examine the working place of appellee within 8 hours prior to the entrance of appellee for work in said mine, and that at said time a dangerous condition existed in the roof of the room where appellee was working and that by reason of the wilful failure of the mine examiner to examine said room, the roof in said room or a part of it fell upon appellee, severely and permanently injuring him, etc.

The second count among other things charges that the mine examiner examined the working place of appellee and that at the time of said examination there was a dangerous condition in the room but that the

---

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

mine examiner wilfully failed to mark it dangerous and that by reason of such failure the roof of said room where appellee was working fell and permanently injured him, alleging damages, etc.

A demurrer was filed to said declaration and, as finally amended, each count of said declaration contained the following allegation with reference to the Workmen's Compensation Act: "The defendant company had elected not to provide and pay compensation to injured employees, according to the provisions of an act entitled 'an act to promote the general welfare of the People of the State of Illinois, by providing compensation for accidental injuries or death, suffered in the course of employment. Approved June 28th, 1913, in force July 1st, 1913. Also known as The Workmen's Compensation Act.'" To which declaration a plea of the general issue was filed by appellant; a trial was had resulting in a verdict of not guilty. A new trial was granted and on a retrial of said cause the jury found appellant guilty and assessed appellee's damages at $3,000. A new trial was denied and judgment was rendered on said verdict. To reverse said judgment this appeal is prosecuted.

The record discloses that appellee commenced work for appellant in its mine near the City of Pickneyville, Illinois, on or about October, 1914, as apprentice to his father and that at the end of 2 years received a certificate of competency as a miner; that after receiving his certificate of competency he was given check No. 130, his father was given check No. 19 and their working places were assigned to them according to these numbers. After appellee received his certificate of competency he continued to work with his father and they both worked under the same check numbers until on or about the 2nd day of December, 1916, at which time appellee suffered the injury for which this suit is brought. The record further dis-

closes that at the time of the injury there were a number of rooms extending in a southerly direction off of the main west entry leading westerly off of the main north entry. These rooms were not numbered, but commencing with the first and counting them in order as you went west, the 33rd and 34th were the working places of appellee and his father. Appellee's check number called for the 34th and his father's for the 33rd room and they were so assigned by the pit boss. These rooms were parallel, separated by a pillar of coal, and had been driven between 40 and 50 feet, and were from 16 to 18 feet wide at their respective face. Appellee and his father had worked together for some 4 or 5 months previous to appellee's injury and such fact was known to the pit boss and mine manager. So far as the record discloses no objection was made to their so working together, and the record discloses that other fathers and sons worked together in the same way in said mine. On the morning of December 2, 1916, appellee and his father after making an examination of their working rooms began loading coal in a car in room 34. They found the examiner's visiting mark but found no mark that indicated a dangerous condition—no such marking having been made as the mine examiner testified that he regarded the working place as safe. After loading the car in room 34 they went to room 33 and began loading coal there. The day before they had set props within about 10 feet of the face to hold up the roof and during the firing of shots over night a number of these props had been blown down and the coal from the face cast out and away from the face and piled up 2 or 3 feet high in some places, and extended out and around certain props that remained standing. Appellee and his father examined the roof of the room and observed a pot or slip of white top over their working place and sounded the same and attempted to pull it down but

finding that it sounded solid proceeded to load coal into the car and had been working only a few minutes when a large piece of white top, weighing several thousand pounds, fell and caught appellee and caused the injury complained of.

It is first contended by appellant for a reversal of said cause that proof that appellant had elected not to be bound by and pay compensation according to the provisions of the Workmen's Compensation Act in force July 1, 1913, had not been made. The record discloses that notice of such election had been properly filed with the Industrial Board and a certified copy of the same was admitted in evidence. The proof of the posting of such notice in appellant's mine was not as satisfactory as it might have been. The vice president of appellant company, and who at one time acted as its superintendent, was placed on the stand by counsel for appellee and testified that in July, 1913, a notice had been posted in said mine; that said company had elected not to pay compensation under the Workmen's Compensation Act. However, said witness did not undertake to say as to what act this notice applied. Other witnesses testified that they observed a notice to the effect that appellant company would not be bound or would not pay compensation according to the Workmen's Compensation Act, some of whom testified that they saw this notice before appellee's injury, and some that they saw the notice after such injury but would not undertake to give the exact language of the notice or as to whether the notice applied to the act of 1911 or the act of 1913. We think, however, in view of all the evidence in the case, the jury were warranted in finding that appellant company had elected not to be bound and pay compensation according to the provisions of the Workmen's Compensation Act of 1913, as the notice given to the Industrial Board specifically referred to the act of 1913, and we think the jury were warranted in the conclusion that the

notice that these different witnesses saw posted in the mine had reference to this act.

It is next insisted by appellant that there was a variance between the allegation with reference to appellant's election not to be bound by the Workmen's Compensation Act and the proof in regard thereto. It is contended by appellant that the title of the act referred to in the declaration is the act of 1911, whereas the proof as to the notice given to the Industrial Board was with reference to the act of 1913. The allegation in the declaration is that appellant had elected not to be bound and pay compensation according to the Workmen's Compensation Act, passed in June, 1913, and in force July 1, 1913. This we regard as sufficient as the remainder of the title can be rejected as surplusage. *Barnes v. Northern Trust Co.*, 169 Ill. 112; *Massachusetts Mut. Life Ins. Co. v. Kellogg*, 82 Ill. 614; *Devine v. Illinois Central R. Co.*, 156 Ill. App. 369.

It is a well-established rule that plaintiff is required to prove only enough of an allegation that is material to make out his cause of action. *New York, C. & St. L. R. Co. v. Blumenthal*, 160 Ill. 40-47.

It is next insisted by appellant that the court erred in admitting in evidence plaintiff's exhibit A, being a certified copy of the notice given to the Industrial Board to the effect that appellant had elected not to be bound and pay compensation under the Workmen's Compensation Act of 1913, for the reasons that the giving of this exhibit constituted a variance and that it did not support the allegations of the declaration. What we have already said sufficiently disposes of this assignment of error.

It is also insisted by appellant that the court erred in allowing the witness, Ridleberger, to state as a conclusion that the working place of appellee would be dangerous on account of the white top in the roof. This objection would be well taken if it were not for the fact that this witness went on and stated specifically

why he would consider such roof dangerous. That being so, we do not think that the ruling of the court constituted serious error.

It is next insisted that the court erred in giving appellee's instruction No. 1, for the reason that said instruction fails to require the jury to find certain matters and things set forth in said count necessary for appellee to prove in order to make out his case, by a preponderance of the evidence, but simply from the evidence. This objection would be good were it not for the fact that other instructions in the series, both those given on the part of appellee and those given on the part of appellant, required that the jury must find the necessary matters and things to be found in order to find a verdict for appellee by a preponderance or greater weight of the evidence. It is not necessary that each instruction shall contain the statement that the jury must find from a preponderance of the evidence, but if that is clearly set forth in the series of instructions, so that the jury could not be misled in reference thereto, but were fully advised that the plaintiff must prove the averments of his declaration by a preponderance of the evidence, that is all that is necessary. *Belden v. Woodmansee*, 81 Ill. 25; *Cunningham v. Stein*, 109 Ill. 375; *Decatur Cereal Mill Co. v. Gogarty*, 180 Ill. 197; *Coulter v. Illinois Cent. R. Co.*, 264 Ill. 423; *Rock Island & P. Ry. Co. v. Leisy Brewing Co.*, 174 Ill. 547; *Gilmore v. Killion*, 206 Ill. App. 462.

It is next insisted that the court erred in giving appellee's instruction No. 5 for the reason that it fails to properly instruct the jury with reference to a wilful violation of the Mine and Miners' Act or of a wilful failure to comply with its provisions. Said instruction is as follows: ''The clause 'wilful violation of this act or wilful failure to comply with any of its provisions' means, in the law, a knowing or conscious violation of the act or failure to comply with any of its provisions. The word 'wilful,' as used in the mining

laws, means a knowing or conscious violation or omission to do the things required by the mining law." An examination of this instruction satisfied us that the objections made thereto are not well taken, for we are satisfied the jury could not be misled by the construction placed upon the provision of said statute in said instruction, and while it might have been better had the cautionary words "knowing or conscious" been again inserted immediately prior to the words "failure to comply with any of its provisions," still taking the instruction as a whole and observing the connection in which the cautionary words are used in the instruction, we are satisfied the jury could not have been misled by the instruction.

It is next insisted that instruction No. 10, given on behalf of appellee, was erroneous for the reason that it assumes the existence of a controverted question of fact. An examination of this instruction satisfies us it is not subject to the criticism made.

It is also insisted the court erred in giving appellee's instruction No. 13 for the reason it is said this instruction leaves out the proposition as to whether or not the negligence of appellee was the proximate cause of his injury. Instruction 13 in effect tells the jury that contributory negligence on the part of appellee is no defense to said cause of action. We do not think the court erred in giving this instruction. *Arkley v. Niblack,* 193 Ill. App. 636; *Randall v. Crescent Coal Co.,* 280 Ill. 517; *Kemp v. Southern Coal & Mining Co.,* 197 Ill. App. 17-24.

In *Kemp v. Southern Coal & Mining Co., supra,* this court in discussing a question of this character says: "Counsel insist that it was Kemp's duty under the statute to have sounded and examined the roof before he commenced work and that if he did not do so, and there is no evidence that he did, he should not be permitted to recover. Paragraph A, section 29 of the Act of 1911 (J. & A. ¶ 7503) provides a penalty for

any wilful neglect, refusal or failure to do the things required to be done by the several sections thereof, and the question might arise in a proper case as to whether Kemp had made himself subject to pay that penalty, but his omission to perform his statutory duty to examine the roof, if he did omit it, could in a case of this kind amount at most only to contributory negligence on his part which is no defense to a suit brought under the mining law." Citing *Illinois Collieries Co. v. Davis,* 137 Ill. App. 15, affirmed in 232 Ill. 284; *Riverton Coal Co. v. Shepherd,* 111 Ill. App. 294, affirmed in 207 Ill. 395.

It is also contended by appellant that appellee's given instructions 8, 9 and 10 all single out portions of the evidence and give undue prominence to the same. The specific matter complained of is the fact that these instructions all refer to "white top" in the roof of appellee's working room. The criticism made would be well taken if it were not for the fact that all the witnesses who testified with reference to the roof of this room either say specifically, or concede, that there was white top in said roof. There being no conflicting evidence in regard thereto, the reference made to white top was not erroneous.

It is further insisted by appellant that the court erred in refusing certain instructions offered by appellant. We have examined these instructions and have also examined the instructions given on behalf of appellant and are of the opinion that so far as the refused instructions state correct principles of law, these principles or propositions were contained in the instructions given on behalf of appellant. The instructions are to be taken as a series, and so taken we do not think the failure of the court to give the refused instructions constituted error.

It is also insisted that the verdict of the jury is against the manifest weight of the evidence. In this connection it will only be necessary for us to refer to

the argument to the effect that appellee was not in his working room at the time he was injured and that the injury resulted not from the failure of appellant's mine examiner to properly examine the mine and to mark the dangerous roof therein, but to the alleged failure of appellee and his father to make a dangerous place safe by props, etc. What we have already said with reference to the contributory negligence of appellee not being a bar to his right of recovery for the wilful failure on the part of appellant to comply with the provisions of the Mine and Miners' Act sufficiently disposes of this point. It is true that if the injury could be referred alone to the negligent act of appellee and not to the failure of appellant to observe the provisions of the Mine and Miners' Act, there would be no right of recovery on the part of appellee, but the question of a wilful failure of appellant to comply with said law was properly submitted to the jury, and their finding in that regard is supported by the evidence.

With reference to the argument that appellee was not in his proper working place at the time he was injured, it is only necessary to say that the record fully supports the contention of appellee that he had been allowed to work with his father with the express knowledge of the managing officers of appellant, and that this custom prevailed in that mine, with the knowledge and consent of the company.

Appellee's father testified among other things: "The mine manager gave me these rooms and he said, 'You would like to have two rooms together, so that you can work with the boy,' and I said, 'Yes, sir.'" The record shows, however, that not only the mine manager and the pit boss but also the mine examiner all had knowledge that appellee and his father were working together. Under the evidence it was for the jury to say whether appellee was in his proper work-

ing place when injured, and we are not disposed to disturb their finding.

It is also insisted by appellant that there is no proof that the mine examiner did not make a proper examination. In other words, it is insisted by appellant that by reason of the fact that the evidence tended to show that the mine examiner within the time specified by statute examined the room where appellee was injured and testified he found no dangerous place and placed no danger mark, that, therefore, the conclusion should be drawn that the room at that time contained no dangerous condition and that the dangerous condition arose after the time that appellant's mine examiner examined the same and before the time when appellee and his father began to work. This, with other questions of the same character, were questions for the jury. From the record in this case we think the jury were warranted in finding that this dangerous condition in the roof of the room where appellee was working existed at the time the mine examiner examined the same, and that if he made a careful examination of the same, he must have discovered said dangerous condition, or he would have discovered the same had he made a careful examination thereof. "The duty to make an examination is enjoined by law, which contemplates a proper and sufficient examination to discover whether dangerous conditions exist, and if such an examination would have disclosed a dangerous condition, a jury is justified in concluding either that the examination was not made or that it disclosed the actual condition, notwithstanding the testimony of a mine examiner to the contrary." *Eichhorn v. St. Louis & O'Fallon Coal Co.*, 288 Ill. 357. If when the mine examiner examined said room he discovered this dangerous condition, it was his duty to have marked it dangerous, or if by a careful examination he could have discovered said dangerous condition and did not make such examination, in either

event the jury would be warranted in finding a wilful failure to perform such duty.

In *Eichhorn v. St. Louis & O'Fallon Coal Co., supra,* the Supreme Court at page 354 says: "The question under consideration came before the court in the case of *Mertens v. Southern Coal & Mining Co.,* 235 Ill. 540, in which there was a slip in the roof on the evening of March 19, 1906, making the roof dangerous and liable to fall, and about 11 o'clock the next day a portion of the roof fell and the plaintiff was severely and permanently injured. No mark had been placed in the room indicating the dangerous condition and no minute or report of the same was made by the mine examiner. It was contended that these facts did not show a wilful violation of the statute, but it was held that the jury were justified in finding that there was a dangerous condition at the time of the examination and if the mine examiner had made a proper examination he must have discovered the dangerous condition, and therefore it was a fair inference that he did not examine the room, or if he did examine it and discovered the condition he failed to mark the same, and that in either case the failure to perform the duty was a conscious one. That case was cited and the opinion quoted from in *Peebles v. O'Gara Coal Co.,* 239 Ill. 370, where it was held not necessary for the plaintiff to prove that the defendant had actually discovered the dangerous conditions complained of, and that operators of mines are liable not only when dangerous conditions have been discovered but also where a proper examination required by the statute would have discovered the existence of such conditions. These decisions state a correct rule, since any other would permit a mine examiner to make only a casual or insufficient examination and the operator excuse himself on the ground that some sort of examination was made."

One of the assignments of error is that the verdict is excessive. However, this assignment of error was

abandoned in the argument. The record discloses that appellee received a very serious injury and we think the verdict is not at all excessive.

We are of the opinion that the evidence in this case fully supports the finding and verdict of the jury and we are not disposed to disturb the same.

Finding no reversible error in the record the judgment of the trial court will be affirmed.

*Judgment affirmed.*